UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL SECURITY ARCHIVE<br>2130 H Street, N.W. Suite 701<br>The Gelman Library<br>Washington, D.C. 20037<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION<br>100 F Street, N.E.<br>Washington, D.C. 20549-5100<br><br>      Defendant | Civ. No. |

## COMPLAINT

### INTRODUCTION

1. In a January 21, 2009 Memorandum issued to Executive Branch Departments and Agencies, President Obama wrote:

> A democracy requires accountability, and accountability requires transparency. As Justice Louis Brandeis wrote, "sunlight is said to be the best of disinfectants." In our democracy, the Freedom of Information Act (FOIA), which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open Government. At the heart of that commitment is the idea that accountability is in the interest of the Government and the citizenry alike.
>
> The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve. In responding to requests under the FOIA, executive branch agencies (agencies) should act promptly and in a spirit of cooperation, recognizing that such agencies are servants of the public.

> All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving FOIA.

2. The National Security Archive (the "Archive") brings this action for injunctive relief against the Defendant for violating the Freedom of Information Act ("FOIA") by failing to respond to or to disclose records in response to two FOIA requests filed by the Archive. It seeks declaratory and injunctive relief directing the Defendant to process the Archive's requests immediately.

## JURISDICTION AND VENUE

3. This action is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) (2008) and 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

### Plaintiff

4. The National Security Archive, founded in 1985, is an independent non-governmental research institute and library. The Archive collects and publishes declassified documents obtained through the Freedom of Information Act. The Archive also serves as a repository of government records on a wide range of topics pertaining to the national security, foreign, intelligence, and economic policies of the United States. The Archive won the 1999 George Polk Award, one of U.S. journalism's most prestigious prizes, for--in the words of the citation--"piercing the self-serving veils of government secrecy, guiding journalists in the search for the truth and informing us all." It also was awarded the 2005 Emmy Award for outstanding

achievement in news and documentary research. The Archive is a representative of the news media as defined in 5 U.S.C. § 552(a)(4)(a)(ii).

Defendant

5. The Securities and Exchange Commission ("SEC") is an "agency" of the United States government within the meaning of 5 U.S.C. § 552(f) and is therefore subject to the Freedom of Information Act. The SEC has possession and control over the records sought by the Archive.

## STATUTORY BACKGROUND

6. The FOIA encourages an informed citizenry by giving the American public access to the Federal Government's records.

7. Once a FOIA request for records has been made, an agency has twenty (20) working days to determine whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i) (2008). If the agency decides not to disclose some or all documents pursuant to the request, it must immediately notify the requestor of records of the reasons for the denial and of the right of the requestor to appeal any adverse determination. Id.

8. Only in "unusual circumstances" may an agency delay its response to a FOIA request, but such delay may not exceed an additional ten working days beyond the initial 20 day period. 5 U.S.C. § 552(a)(6)(B). Such "unusual circumstances" do not include the need to process a large, but ordinary, number of requests, insufficient staff or funding, or the disorganization of records.

9. If the agency fails to comply with the time limits enumerated in 5 U.S.C. § 552(a)(6)(A)(i) (2008), the requestor of records is deemed to have exhausted his administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i) (2008).

10. Because the Archive is a representative of the news media, the Defendant may ordinarily charge the Archive only for duplication fees. 5 U.S.C. § 552(a)(4)(A)(ii)(II) (2008). The Defendant may not charge such fees if, as here, it has failed to comply with the FOIA's time limits. 5 U.S.C. § 552(a)(4)(A)(vii) (2008).

## FACTS

11. The Archive conducts a Colombia Documentation Project. The Project uses archival research methods, including the Freedom of Information Act, to document and publish information about US-Colombia relations and to advance the ongoing truth and reconciliation process in Colombia, with a focus on the most important cases of human rights abuses.

12. In particular, the Archive has sought records pertaining to the relationship between Chiquita Brands International and its Colombian subsidiaries with illegal armed para-military groups in Colombia. On March 19, 2007, Chiquita pleaded guilty in this court to one count of engaging in transactions with a specially-designated global terrorist and subsequently paid a $25 million criminal fine.

13. The Justice Department press release announcing the indictment stated:

> The plea agreement arises from payments that Chiquita had made for years to the violent, right-wing terrorist organization United Self-Defense Forces of Colombia – an English translation of the Spanish name of the group, "Autodefensas Unidas de Colombia" (commonly known as and referred to hereinafter as the "AUC"). The AUC had been designated by the U.S. government as a Foreign Terrorist Organization ("FTO") on Sept. 10, 2001, and as a Specially-Designated Global Terrorist ("SDGT") on Oct. 31, 2001. These designations made it a federal crime for Chiquita, as a U.S. corporation, to provide money to the AUC.
>
> . . ., the investigation leading to this prosecution developed evidence that for over six years – from sometime in 1997 through Feb. 4, 2004 – Chiquita paid money to the AUC in two regions of the Republic of Colombia where Chiquita had banana-producing operations: Urabá and Santa Marta. Chiquita made these payments through its wholly-owned Colombian subsidiary known as "Banadex."

By 2003, Banadex was Chiquita's most profitable operation. Chiquita, through Banadex, paid the AUC nearly every month. In total, Chiquita made over 100 payments to the AUC amounting to over $1.7 million.

Chiquita began paying the AUC following a meeting in 1997 between the then-leader of the AUC, Carlos Castaño, and a senior executive of Banadex. Castaño implied that failure to make the payments could result in physical harm to Banadex personnel and property. No later than September 2000, Chiquita's senior executives knew that the corporation was paying the AUC and that the AUC was a violent, paramilitary organization led by Carlos Castaño. Chiquita's payments to the AUC were reviewed and approved by senior executives of the corporation, including high-ranking officers, directors and employees.

14. The Archive filed two FOIA requests with the SEC. The first request, dated November 19, 2008, sought documents pertaining to SEC investigations of Chiquita Brands International with respect to its activities in Colombia. The Archive sought a waiver of search and review fees as a representative of the news media. The SEC responded to the request with an Acknowledgement of Receipt and assigned the request number 09-00797-FOIA.

15. The Archive's second request, dated November 20, 2008, sought records pertaining to the finances of Chiquita Brands' Colombia based subsidiary, Banadex. The Archive sought a waiver of search and review fees as a representative of the news media. The SEC responded with an Acknowledgment of Receipt and assigned it request number 09-00835-FOIA.

16. With respect to request 09-00835, the SEC responded with a December 15, 2008 letter identifying responsive records available from the Clerk of this Court and on the SEC website. The letter further stated that the SEC would be unable to complete processing of the remainder of the request within the statutory timeframe.

17. On or about April 21, 2009, an employee of the Archive contacted the SEC in an effort to secure release of the requested records more quickly. The Archive narrowed its request to exclude records of consumer complaints against Chiquita.

18. By letter dated May 1, 2009, the SEC wrote that it had located potentially responsive investigatory information comprising approximately seven boxes of records, and combined the two FOIA requests into one, number 09-00835-FOIA. The letter further stated that the request would be placed in the SEC's first-in, first-out (FIFO) track if the Archive requested the SEC to do so by May 11, 2009.

19. The letter also invited the Archive to further narrow its search and stated that the SEC was "consulting with other Commission staff regarding a separate investigative matter that might contain responsive information."

20. To the best of its knowledge, the Archive did not receive the May 1, 2009 letter. The Archive again contacted the SEC in August, 2009 to determine the status of its FOIA requests. The SEC advised the Archive of its May 1, 2009 letter and stated that the Archive had not responded to it. The Archive explained that it had not received the May 1, 2009 letter and did not intend to abandon its requests. The Archive and SEC therefore discussed processing of the requests. During subsequent telephone conversations with the SEC, the Archive further narrowed its requests and sought information about the nature of the records to enable the Archive to narrow the request even further.

21. By letter dated November 10, 2009, the SEC wrote that it was unable to narrow the requests because doing so would require a "document-by-document" search of the apparently unindexed records contained in twenty-five boxes, seven associated with an investigation started in January 1998 and eighteen related to a second investigation opened in May 2004. The letter stated that the Archive's request would be placed in the FIFO queue as of June 30, 2009.

22. The Archive has received no further correspondence, records or response from the SEC.

23. The Archive has therefore exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i) (2008), and is entitled to judicial review of the SEC's constructive denial of its requests.

## CLAIM 1

24. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-23 in the complaint as if fully set forth herein.

24. Defendant has violated the FOIA by failing to disclose records responsive to Plaintiff's November 19, 2008 request, record number 09-00797-FOIA, to which it is statutorily entitled, within the statutory time period for the processing of this request. The requested records are not covered by any applicable FOIA exemptions. 5 U.S.C. § 552(b). The Archive has exhausted its administrative remedies and is therefore entitled to an injunction requiring disclosure of the records requested without payment of fees.

## CLAIM 2

25. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-23 in the complaint as if fully set forth herein.

26. Defendant has violated the FOIA by failing to fully disclose records responsive to Plaintiff's November 20, 2008 request, record number 09-00835-FOIA, to which it is statutorily entitled, within the statutory time period for the processing of this request. The requested records are not covered by any applicable FOIA exemptions. 5 U.S.C. § 552(b). The Archive is has exhausted its administrative remedies and is therefore entitled to an injunction requiring disclosure of the records requested without payment of fees.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that Defendant's failure to disclose records requested by the Archive on November 19, 2008, and November 20, 2008 is an unlawful violation of the FOIA;

2. Establish a schedule whereby the Defendant is to complete its search, review and duplication of documents responsive to Archive's requests;

3. Order Defendant to disclose, without fees or costs, all records requested by the Archive in its November 19, 2008 and November 20, 2008 requests in accordance with that schedule;

4. Order Defendant produce a *Vaughn* index and declaration for any records withheld on the grounds of asserted exemption;

5. Award Plaintiff its costs and reasonable attorney's fees;

6. Award any other relief that the Court deems just and proper.

Respectfully submitted,

_____
JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, D.C. 20052
(202) 994-7463 (phone)
(202) 994-4693 (fax)
jgutman@law.gwu.edu (e-mail)
Attorney for Plaintiff

-9-

_____/s/_____

MEREDITH FUCHS (D.C. Bar No. 450325
Of Counsel
National Security Archive
2130 H Street, N.W. Suite 701
The Gelman Library
Washington, D.C. 20037


Dated: January 21, 2010